CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 3 1 2012

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ERIC JOSEPH DEPAOLA, | ) | Civil Action No. 7:10cv00561 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LESLIE FLEMMING, *et al.*, | ) | By: Samuel G. Wilson |
|    Defendants. | ) | United States District Judge |

Turner v. Safley gives prison officials discretion to regulate the behaviour and daily lives of inmates in ways that are "reasonably related to valid penological interests." 482 U.S. 78, 89 (1987). Eric Joseph DePaola, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his First Amendment rights by denying him access to certain publications. The parties filed cross-motions for summary judgment and the court referred the matter to United States Magistrate Judge Robert S. Ballou for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has issued a report analyzing DePaola's claims under Turner and recommending the court grant summary judgment for the defendants. DePaola has filed objections to the report, largely reiterating arguments made in his pleadings. The court has reviewed the record *de novo* in light of DePaloa's objections and adopts the Magistrate Judge's report. The court writes briefly here to underscore some of the content of the publications DePaola sought, officials denied him, and concerning which he exhausted the grievance process.

I.

Turning the Tide, Volume 22, No. 3: The author recounts marching at a "Nazi gathering" while carrying a large banner that read: "the only good fascist is a dead fascist." The author also provides the names and addresses of people the author believes to be Nazis.

Turning the Tide, Volume 22, No. 4: State authority is depicted as being in collusion with the Nazis, and the authors publish the names, addresses and telephone numbers of people they believe to be Nazis.

Turning the Tide, Volume 23, No. 2: The author discusses "successfully delivering 'U-lock justice'" in reference to the use of a 2–5 pound piece of steel, originally intended to function as a bicycle lock, to vandalize a vehicle or to physically injure a person.

Workers World, Volume 51, No. 50, Volume 52, No. 35, Volume 52, No. 36. Each contains an article entirely in a foreign language (Spanish) without an English translation.

## II.

The Supreme Court held in Turner that a prison regulation is "valid if it is reasonably related to legitimate penological interests."[1] Turner, 482 U.S. at 89. According to the court, when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. The Turner reasonableness standard applies with equal force to regulations of publications. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

---

[1] Whether a regulation is "reasonably related" to a legitimate penological interest depends on: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Turner, 482 U.S. at 89–92. The prisoner has the burden of proof to disprove the validity of a prison regulation pursuant to the Turner analysis. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

2

Here, the court finds that the statements in each issue of Turning the Tide, reasonably read are a call to violence and that each publication's exclusion was well within the institution's responsibility for defining the legitimate goals of a correctional system.

The excluded Spanish-language articles in Workers World stand on somewhat different footing than the excluded Turning the Tide publications. Defendants have filed evidence to the effect that foreign language articles or publications present a security concern for the VDOC because they are not from an approved vendor, prison officials do not readily know their contents, and the VDOC does not have the resources to translate each foreign language article or publication that comes into a facility. (Collins July 22, 2011 Aff. ¶ 6.) The court agrees with the Magistrate Judge's report that, under the circumstances present here, these concerns are sufficient to justify their exclusion. The regulation is rationally related to the prison's interest in efficiently allocating scarce resources, and DePaola has alternative means of exercising his right.[2]

### III.

For the reasons stated herein, the court will adopt the Magistrate Judge's report and recommendation.

**ENTER:** This 31st day of January, 2012.

_United States District Judge_

---

[2] The court takes notice of the increased Spanish speaking population in Virginia's prisons. Considering and balancing of the Turner factors in the context of a publication request by an inmate who only speaks Spanish may raise issues not raised by DePaola's request here. The court notes it is familiar with Mr. DePaola, having recently presided at a trial in which he claimed to be the victim of a prison guard's excessive force. It was readily apparent at trial that DePaola is easily incited, violent, and that, in fact, he attacked and "shanked" the guard. It was also apparent that DePaola speaks English fluently. As DePaola is a fluent English speaker, "alternative means of exercising [his] right . . . remain open" to him. Turner, 482 U.S. at 89–92.

3